UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| DR. NORA HUTTO, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-70 |
| | § | |
| UNIVERSITY OF HOUSTON SYSTEM, *et al.*, | § | |
| | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. No. 43) on behalf of the University of Houston System ("UHS"), University of Houston—Victoria ("UHV"), Dr. Diane Prince ("Dr. Prince"), Dr. Dan Jaeckle ("Dr. Jaeckle") and Dr. Paul Carlson ("Dr. Carlson") (collectively, "Defendants"). Also pending before the Court are Plaintiff's Motion for Leave to Amend Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 52), Plaintiff's Motion to Supplement Exhibits Attached to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 53) and Plaintiff's Motion for Leave to Amend Proof by Filing a Supplemental Verification of Dr. Roy Foley and Exhibits Thereto (Dkt. No. 54). After considering the motions, responses and applicable law, the Court is of the opinion that Defendants' Motion for Summary Judgment should be granted and Plaintiff's motions be denied.

**Factual & Procedural Background**

This action arises out of a conflict between UHV and Dr. Roy Foley ("Dr. Foley"), who Plaintiff Dr. Nora Hutto ("Dr. Hutto" or "Plaintiff") believes was discriminated against based on his race in the 1990s. This race-based discrimination purportedly took the form of Dr. Foley's removal

as Chair of the Division of Education in 1994 and denial for promotion from associate to full professor in 1997, 1998 and 1999. Drs. Prince, Carlson and Jaeckle were allegedly among the key actors orchestrating these events. Following Dr. Foley's rejected applications for promotion, Dr. Foley filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which evolved into a 1999 lawsuit against UHS, UHV and various university administrators and professors, including Drs. Prince and Carlson ("the 1999 Suit").

Dr. Hutto joined Dr. Foley as co-plaintiff in the 1999 Suit claiming various acts of discrimination and retaliation stemming from her support of Dr. Foley. Dr. Hutto's claims of retaliation and gender-based discrimination under Title VII and intentional infliction of emotional distress were dismissed by summary judgment in September 2001. *See Foley v. Univ. of Houston Sys.*, Civ. A. No. V-99-47 (S.D. Tex. Sept. 30, 2001). On interlocutory appeal, Dr. Hutto's remaining claims of free speech retaliation pursuant to 42 U.S.C. § 1983 and retaliation under 42 U.S.C. § 1981 were dismissed by the Fifth Circuit on March 6, 2003. *See Foley v. Univ. of Houston Sys.*, 324 F.3d 310 (5th Cir. 2003), *opinion withdrawn and superseded by*, 355 F.3d 333 (5th Cir. 2003). Although Dr. Hutto's claims were dismissed, Dr. Foley proceeded to a March 2005 trial at which Dr. Hutto testified on his behalf.

In July 2004, several months before Dr. Foley's trial, Dr. Hutto filed a discrimination charge with the EEOC giving rise to the present action. Dr. Hutto claims that Defendants have continued their retaliation against her based on her affiliation with Dr. Foley and that their retaliatory harassment intensified after the resolution of her claims by the Fifth Circuit. Although the events prompting Dr. Hutto's present claims are difficult to discern from her brief in response to Defendants' Motion for Summary Judgment, the Court has attempted to identify the most vital

portions of Dr. Hutto's conspiratorial allegations from her forty-nine page verification, Dkt. No. 51, Attach. 1, and the parties' other filings in this matter. Many of the statements in Dr. Hutto's verification are objectionable, have been properly objected to by Defendants and are thus not competent summary judgement evidence. In an attempt to place this case in context, however, the Court presents the facts and Dr. Hutto's allegations as follows.

Dr. Hutto began her career at UHV in 1993 as an Associate Professor in the Education Division and continues to work at UHV as a tenured professor today. In early 2004, after Dr. Hutto's claims had been dismissed by the Fifth Circuit, Dr. Jaeckle was promoted to the position of Interim Provost of UHV.

During her time at UHV, Dr. Hutto had become an active consultant and investigator concerning the Eisenhower/Teacher Quality Grant Program. Dr. Hutto's accomplishments relating to her involvement with the program apparently comprised a good portion of her reputation and success at UHV. Her involvement with the program also resulted in compensation in addition to her base salary.

Dr. Hutto's complaints appear to largely center around the auditing and eventual alteration of the Eisenhower Grant Program. Beginning sometime in 2004, UHV financial auditors and administrators engaged in a series of audits aimed at the Eisenhower Grant Program. Dr. Hutto claims that UHS auditor Frank Scheidler and UHV Vice President for Administration & Finance Wayne Beran, among others, instigated these audits at the direction of Dr. Jaeckle. Defendants, however, have presented evidence that the decision to perform the audits was made before Dr. Jaeckle became Interim Provost, without input from any other individually named defendant in this action and based on legitimate, non-discriminatory motives. Specifically, the evidence indicates the

3

audits were performed to ensure compliance with federal regulations requiring that faculty members not be compensated in excess of 100% of their salary for participation in grant programs. Either in the midst of or following these audits, Dr. Jaeckle, in conjunction with his responsibilities as Interim Provost, rewrote certain policies as they relate to federally-sponsored grants at UHV. The new policies appear to have resulted in the denial of at least some compensation Dr. Hutto felt she was owed from her participation with the Eisenhower Grant Program. Dr. Hutto has presented no evidence that the denial of compensation resulting from these audits is limited to her or her close affiliates she alleges to have been targeted.

Dr. Hutto also references the actions of Dr. John Stansell ("Dr. Stansell"), a former student of Dr. Carlson who has risen to the position of Dean of the School of Education & Human Development.[1] According to Dr. Hutto, Dr. Stansell, in an effort to harm Dr. Hutto and purportedly based on his allegiance to Dr. Carlson, pioneered the manipulation of at least one of Dr. Hutto's annual performance evaluations. The UHV performance evaluation criteria is comprised of three independent components: teaching, scholarly activity and service to the institution. Dr. Stansell's manipulation purportedly included the consideration of informal student evaluations of their professors, which affected the teaching component, and the removal of grant participation from consideration as a scholarly activity, which affected the scholarly activity component (although Dr. Hutto's own allegations appear to concede that grant participation is still considered a component of service to the institution). These changes purportedly had a negative impact on Dr. Hutto's yearly

---

[1] Dr. Stansell apparently replaced Mary Natividad as Dean of the School of Education and Human Development sometime in late 2005 or early 2006.

evaluation.[2] Although Dr. Hutto has obtained tenure status, such negative evaluations allegedly could threaten her position and pay at UHV. Notably, whereas Dr. Hutto presents no evidence that Dr. Stansell's alleged actions were inspired by malice or his supposed loyalty to Dr. Carlson, Defendants have produced evidence that Dr. Stansell's decisions were made independently and without any retaliatory motive.

Dr. Hutto additionally refers to a variety of comments and loosely related events occurring over a number of years that she characterizes as being threatening and/or intimidating.[3] Although the Court will not attempt to parse each comment and circumstance, Dr. Hutto seems to center her contentions around statements allegedly made by Drs. Carlson and Prince during a pair of 2004 Administration Educator Development ("AED") Program meetings. Dr. Carlson's purported comments generally consisted of his questioning Dr. Hutto's expertise to make administrative decisions. Dr. Prince's supposed remarks also consisted of her stating to several AED administrators that she wished they would "take care of" Dr. Hutto.

Dr. Hutto further refers to a comment Dr. Carlson made to her at a May 2005 scholarship award meeting at the University of Houston—Sugarland. According to Dr. Hutto, as she was exiting the room in which the meeting was taking place, Dr. Carlson stopped her and the two began to

---

[2] On a 5-point scale, Dr. Hutto received an evaluation of 5.0 for the year of 2001, 4.61 for 2002, 4.9 for 2003, 4.9 for 2004, 4.7 for 2005 and 4.6 for 2006. The Court, moreover, notes that in each of Dr. Hutto's performance evaluations she received positive comments regarding her student evaluations and credit under scholarly activity for grant participation.

[3] Many of these supposed retaliatory and harassing events occurred throughout the 1990s, whereas others appear to have taken place well after the filing of Dr. Hutto's 2004 EEOC charge. Although neither party spends much time addressing the issues, it appears clear that based on the duplicative and stale nature of at least some of Dr. Hutto's assertions, the doctrine of res judicata or an applicable statute of limitations might bar a substantial portion of her claims. Moreover, as some of these events appear to have taken place well after Dr. Hutto's most recent EEOC charge, they may be outside the scope of this action. However, because neither party focused on these issues and her claims fail on other grounds, as outlined below, the Court need not address these concerns.

argue. Dr. Hutto states that Dr. Carlson alleged that she was causing a significant amount of trouble at UHV. In response to Dr. Hutto's question as to what Dr. Carlson was referring to, he replied that it was her "lawsuit and legal proceedings."

Dr. Hutto further alleges that Dr. Jaeckle misrepresented her travel records, accused her of misusing funds, caused UHV to present an inaccurate audit report to the UH Board of Regents regarding Dr. Hutto's grants and generally attempted to undermine her employment. Dr. Hutto also contends that Defendants conspired to prevent her from serving on various committees.

## Summary Judgment Standard

A summary judgment shall be issued if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999). In considering a motion for summary judgment, the Court construes factual controversies in the light most favorable to the non-movant, but only if both parties have introduced evidence showing that an actual controversy exists. *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998). If the burden of proof at trial lies with the non-movant, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden is on the movant to convince the court that no genuine issue of material fact exists as to the claims asserted by the non-movant, but the movant is not required to negate elements of the non-movant's case. *Id.* at 323.

The non-moving party may not rest solely on its pleadings. *King v. Chide*, 974 F.2d 653, 656 (5th Cir. 1992). For issues on which the non-movant will bear the burden of proof at trial, that party

must produce summary judgment evidence and designate specific facts which indicate that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Needless to say, unsubstantiated assertions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet its burden, the non-moving party must present "significant probative" evidence indicating that there is a triable issue of fact. *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1995). If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## Discussion

**I.     Consideration of Amended Response to Summary Judgment and Supplemental Exhibits and Proof Thereto**

Before assessing Defendants' Motion for Summary Judgment on the merits, the Court must determine what documents have been properly submitted to the Court for consideration. Dr. Hutto has filed a Motion for Leave to Amend Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 52) and a pair of subsequent motions, *see* Dkt. Nos. 53 & 54, aimed at supplementing and/or amending the exhibits and proof attached to Dr. Hutto's Amended Memorandum in Opposition to Defendants' Summary Judgment (Dkt. No. 52, Attach. 1). To evaluate whether Dr. Hutto should be granted leave to amend her response to Defendants' motion and enter her supplementary evidence, the Court must provide a brief history of Plaintiff's delay

in this case and the extreme delay surrounding her response to Defendants' Motion for Summary Judgment.

Prior to Defendants' filing their Motion for Summary Judgment, the Court had already granted Plaintiff numerous extensions of time relating to discovery and various other filing deadlines. *See* Dkt. No. 14 (granting Plaintiff an extension of time to produce expert reports and records of expert witnesses); Dkt. No. 17 (granting Plaintiff's motion to stay and abate the proceedings); Dkt. No. 31 (granting Plaintiff's motion for a continuance, to reopen discovery and to extend the applicable timelines); Dkt. No. 42 (granting Plaintiff's motion for extension of time to file responses to Defendants' motion to strike expert witnesses).

Despite these earlier delays, this action proceeded and on August 31, 2007, Defendants filed their Motion for Summary Judgment. *See* Dkt. No. 43. On October 22, 2007, fifty-five days[4] after Defendants' motion was filed, Dr. Hutto filed a Motion for Leave to File an Out of Time Response to Defendants' Motion for Summary Judgment. *See* Dkt. No. 44. In the motion, Dr. Hutto prayed for an extension of time up to and including October 29, 2007 to file her response. As a result of this filing, the Court held a status conference with the parties. *See* Dkt. No. 47. At the conclusion of this conference, the Court granted Dr. Hutto's motion and gave her an even longer time to reply than she initially requested. *Id.* Specifically, the Court ordered that "Plaintiff shall file her response to Defendants' Motion for Summary Judgment (Dkt. No. 43) by Wednesday, October 31, 2007." *Id.*

On October 31, 2007, Plaintiff *again* filed for an extension of time to file her response. *See* Dkt. No. 48. The Court convened the parties for a second status conference on the issue. *See* Dkt.

---

[4] The Local Rules of the Southern District of Texas require a non-movant to respond to a motion within twenty days from the date the motion is filed. *See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling twenty days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition).

8

No. 49. During the conference, Dr. Hutto's attorney asserted that he could file a response to Defendants' summary judgment motion by November 5, 2007. Although Defendants were adamantly opposed to yet another extension, the Court granted Plaintiff further leeway, ordering that "Plaintiff shall file her response to Defendants' Motion for Summary Judgment (Dkt. No. 43) no later than 5:00 p.m. on Tuesday, November 6, 2007. *The Court will not consider a response filed after the deadline stated above.*" *Id.* (emphasis added).

On November 5 & 6, 2007, Dr. Hutto's attorney repeatedly called the Court's case manager to provide status reports as to his schedule in an unrelated hearing in Galveston, Texas. Despite the Court's hyper-extended deadline, it appeared as though Dr. Hutto would not file a timely response. Finally, sometime late in the evening of November 6, Plaintiff filed her response, titled, "Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment." *See* Dkt. No. 51 (filed on November 6, 2006 and entered on November 7, 2007 at 12:30 a.m.). Although Dr. Hutto filed her response after the designated deadline of 5:00 p.m., the Court will accept it as timely filed.

Almost a month later, on December 2, 2007, Dr. Hutto filed her Motion for Leave to Amend Memorandum in Opposition to Defendants' Summary Judgment (Dkt. No. 52). Over the next five days, she filed two supplementary motions seeking to add and incorporate evidence to her amended response. *See* Dkt. Nos. 53 & 54.

Despite the overwhelmingly late nature of these filings, and citing only *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 391 (5th Cir. 1985), Plaintiff asserts that she "files this Motion [Dkt. No. 52] and the proposed amendment as reasonably soon as she realized that an amendment was necessary, and therefore the [C]ourt may permit the amendment." Dkt. No. 52. However, as Defendants point out, *Auster* does not stand for the proposition Dr. Hutto wishes. As an initial

matter, the *Auster* court considered whether a district court abused its discretion in refusing to allow a plaintiff to amend its complaint under Rule 15 in response to a Rule 12 motion to dismiss, not whether a late amendment to a response to a motion for summary judgment should be allowed. *Auster*, 764 F.2d at 391. Moreover, in concluding that the district court abused its discretion by failing to allow the plaintiff to amend its complaint, the *Auster* court observed that "[Plaintiff] sought the amendment just six months after it filed this action, it had diligently sought discovery at both state court and these proceedings, and it asked for amendment promptly upon discovering the basis for new allegations." *Id.*

Here, the record makes clear that Plaintiff did not act with diligence or attempt to amend in a prompt fashion. Plaintiff's actions are the product of an extreme and unjustified delay, and her effort to amend and/or supplement her summary judgment response, if allowed, would represent a blatant end run around the Court's explicit orders. Plaintiff has not established good cause for her repeated procrastination and she has not identified, nor can the Court otherwise discover, a case allowing such dilatory filing in response to a motion for summary judgment. Therefore, based on Dr. Hutto's continued failure to adhere to the orders of this Court and the extreme tardiness in which she attempted to amend and supplement evidence to her response to Defendants' Motion for Summary Judgment, Plaintiff's motions are hereby denied.

## II.     Plaintiff's Initial Response to Summary Judgment

As the Court will only consider Plaintiff's initial response to Defendants' motion for summary judgment, the Court next turns its attention to the filing itself. Dr. Hutto's operative response is comprised of an eight page, unnumbered, single spaced brief replete with spelling errors and containing almost no citation to the record. *See* Dkt. No. 51. Indeed, the response brief does not

so much as include a statement of the facts except for its nearly incomprehensible introduction and its apparent attempt at incorporating "a statement of genuine issues" as "attached herein after." A review of Plaintiff's response reveals that no attachment, exhibit or other document is titled or otherwise indicated as a separate, incorporated "statement of genuine issues." However, based on the filing's compilation, it would appear that the response brief seeks to incorporate the forty-nine page "Verification of Dr. Nora Hutto" as its statement of the facts. *See* Dkt. No. 51, Attach. 1. Dr. Hutto's verification presents a rambling expose of events beginning in the early 1990s and extending to the present day. The response brief also contains the following reference: "In support of her response, plaintiff includes the evidence in the attached list and as attached exhibits." Dkt. No. 51. This reference appears to allude to an appendix and almost forty exhibits, almost none of which are explicitly referred to in the brief.

In her opaque brief, Plaintiff sets forth murky allusions to the possibility that she has been unlawfully retaliated against. Plaintiff, however, cites little authority for her theories, and more importantly, completely fails to marshal evidence in support of her assertions. When deciding a motion for summary judgment, a court has no burden to sift through the record in search of triable fact issues; that burden is placed squarely on the nonmovant. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *cf. In re Cygnus Telecom. Tech., LLC*, 536 F.3d 1343, 1352 (Fed. Cir. 2008) (commenting on the difficulty presented to both the court and the moving party when a party resisting summary judgment fails to properly present the evidence on which it wishes to rely) (citing *Carmen v. San Francisco Unified*

*School Dist.*, 237 F.3d 1026 (9th Cir. 2001)); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Indeed, "[w]hen evidence exists in the summary judgment record but the nonmovant fails to even refer to it in the response to the motion for summary judgment, *that evidence is not properly before the district court*." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (emphasis added).

## III.   Merits of Defendants' Motion for Summary Judgment

### A.   Title VII and § 1981 Retaliation Claims[5]

Plaintiff generally complains that she was retaliated against for her support of Dr. Foley in the late 1990s. Because Dr. Hutto's contentions rest upon circumstantial evidence, the Court must analyze her claims under the familiar *McDonnell Douglas* evidentiary framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (applying the *McDonnell Douglas* framework to a claim of pretextual retaliation under Title VII); *see also Mayberry v. Mundy Contract Maint. Inc.*, 197 Fed. App'x. 314 (5th Cir. 2006) (unpublished) (applying the framework to a retaliation claim brought under both Title VII and § 1981).

To establish a prima facie case of retaliation under Title VII and/or § 1981, a plaintiff must establish the following three elements: (1) the plaintiff engaged in a protected activity; (2) the defendant took an adverse employment action against the plaintiff; and (3) a causal link exists

---

[5] As Defendants note, claims of retaliation under Title VII and § 1981 are treated as coextensive for the purposes of summary judgment because they are essentially parallel causes of action to which the same standards apply. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340, n.8 (5th Cir. 2003); *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). The two statutes do differ in regards to against whom relief may be obtained. *Foley*, 355 F.3d at 340, n.8. Relief pursuant to Title VII is only available against an employer, whereas relief pursuant to § 1981 is also available against individual defendants such as supervisors and fellow employees. *Id.* For the purposes of this order, however, this differentiation is irrelevant because Plaintiff's retaliation claims fail as they are applied to any defendant.

between that protected activity and the adverse employment action. *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 805-07 (5th Cir. 2007) (citing *Septimus*, 399 F.3d at 608-09). If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the action. *Id.* If the defendant offers such a reason, the burden then shifts back to the plaintiff to show that the defendant's reason is mere pretext. *Id.* Ultimately, the plaintiff must show that "but for" the protected activity, the adverse action would not have occurred. *Id.*

The standard applicable to the "causal link" required to satisfy the third element of a plaintiff's prima facie case is less stringent than the "but for" standard used in the ultimate causation determination. Indeed, a plaintiff "need not prove that [her] protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n. 4 (5th Cir. 1996); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983). However, the Fifth Circuit has made clear that a plaintiff "must produce *some* evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of retaliation." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385-86 (5th Cir. 2003) (emphasis in original).

A plaintiff may establish a causal link if she produces evidence demonstrating that the defendant's adverse action was taken at least in part on the knowledge of the plaintiff's engaging in a protected activity. *Id.* at 385-86. "Mere knowledge," however, is not sufficient, by itself, to establish a prima facie case for retaliation. *Watson v. Tex. Youth Comm'n*, Civ. A. No. 07-50295, 2008 WL 687278, at *4 (5th Cir. March 13, 2008) (unpublished) (applying analogous Texas retaliation law). Courts that have accepted mere temporal proximity "between an employer's

knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' " *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing with approval various circuit courts holding that three and four month periods between protected activities and adverse employment actions was too long to support an inference of causation); *see also Bell v. Bank of Am.*, 171 Fed. App'x. 442, 444 (5th Cir. 2006) (unpublished) (concluding that a seven-month lapse between a protected activity and the adverse employment action was insufficient, on its own, to establish a prima facie case of retaliation); *Myers v. Crestone Int'l, LLC*, 121 Fed. App'x. 25, 28 (5th Cir. 2005) (unpublished) (holding that a three-month lapse, by itself, was insufficient); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471-72 (5th Cir. 2002) (reasoning that a five-month lapse, by itself, was insufficient). Although a plaintiff's burden to establish a prima facie case is not onerous, a mere subjective belief that retaliation occurred is insufficient to establish a genuine issue of fact. *See, e.g., Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426-27 (5th Cir. 2000) (citing *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985)).

As an initial matter, Dr. Hutto does not specify exactly what protected activity or activities she engaged in that could serve as the predicate act or acts for her retaliation claims. The thrust of Dr. Hutto's filings, however, indicate that she bases her retaliation claims on her support of and affiliation with Dr. Foley and the Fifth Circuit's 2003 dismissal of her claims remaining from the 1999 Suit.

Dr. Hutto's broad contentions that her support of Dr. Foley and participation in the 1999 Suit were the basis for Defendants' audits, change in university policy and/or various remarks and actions are insufficient to allow her retaliation claims to survive summary judgment. Because Dr. Hutto has

not properly directed the Court to any competent evidence that might establish her prima facie case, the only discernable evidence of a connection between Dr. Hutto's protected activities and the alleged retaliatory actions is timing. As discussed above, the genesis of this action is a series of internal employment conflicts beginning in the 1990s. These events unfolded into a 1999 lawsuit in which Dr. Hutto participated. The sequence of supposedly retaliatory actions principally complained of in this suit occurred years later and are thus insufficient to give rise to an inference of causation between her acts and those taken by Defendants. Although timing can establish that a causal link exists "where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate," this is not the case here. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 418 n. 9 (5th Cir. 2003) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). In light of the fact that Dr. Hutto has failed to bring forth any competent summary judgment evidence indicating a temporal or casual connection between her activities and those of the Defendants, the Court concludes that her affiliation with Dr. Foley and participation in the 1999 Suit do not give rise to an inference of unlawful retaliation.

To the extent Dr. Hutto contends that the Fifth Circuit opinion dismissing her claims serves as the protected activity upon which Defendants based their retaliation, Plaintiff offers no support for her argument. Moreover, the Court finds the contention without merit as the Fifth Circuit's dismissal of Dr. Hutto's claims occurred well before the alleged retaliatory actions of which she primarily complains and nearly a year before she filed her 2004 EEOC charge. These facts undermine any causal connection between the events. Although Dr. Hutto globally alleges Defendants' retaliatory actions intensified after the Fifth Circuit's dismissal of her claims, she presents no competent evidence that would independently suggest that Defendants' actions were

taken because of or in relation to this development.

Perhaps more important is the fact that the issues raised by Dr. Hutto in this suit are almost identical to those addressed by the Fifth Circuit and this Court in the proceedings surrounding the 1999 suit. Dr. Hutto's present suit is a blatant attempt to relitigate claims that have previously been adjudicated. The events Dr. Hutto references to support her claims of retaliation—or at least those not subject to res judicata and limitations bars—occurred well after her involvement with Dr. Foley and the 1999 Suit and are insufficient to support her legal contentions here.

In whole, Plaintiff provides no summary judgment evidence that indicates, and the circumstances do not otherwise establish that, a causal link exists between her actions and those taken by Defendants. Dr. Hutto's conspiratorial allegations and subjective beliefs are insufficient to sustain this action beyond summary judgment. The Court concludes that based upon the evidence to which it has been directed, Plaintiff has failed to carry her burden of establishing a prima facie case of retaliation under both Title VII and § 1981.

The Court has reviewed Dr. Hutto's verification in detail as well as the other evidence on which she appears to rely to determine whether she has presented anything that could potentially create a fact issue for consideration by a jury. Assuming, arguendo, such evidence establishes a prima facie case of retaliation, Defendants have produced evidence that the actions over which Dr. Hutto complains were taken with legitimate, non-discriminatory motive. The burden thus shifts to Dr. Hutto to show that these actions were taken *because of* her support of Dr. Foley and/or the Fifth Circuit's dismissal and not because of the Defendants' non-discriminatory reasons. Dr. Hutto has failed to do so. Plaintiff has not presented evidence that, but for her support of Dr. Foley or the Fifth Circuit's resolution of her claims, grants at UHV would not have been audited and the process by

which they are handled reformed; the professor evaluation process would not have unfolded as it did; or any of the other actions mentioned would not have occurred.

The only evidence which causes the Court to momentarily pause in dismissing Dr. Hutto's retaliation claim is the comment made by Dr. Carlson at the summer scholarship meeting. However, Dr. Carlson's comment was made in May 2005, well after the "protected activities" Dr. Hutto references, and the Court finds the remark insufficient to create a fact issue as to whether the actions Dr. Hutto believes to be retaliatory would not have occurred but for her participation in the 1999 Suit and its eventual resolution on appeal. Upon review of the record present in this case, the Court concludes that no fact issues remain for jury determination as they might relate to Dr. Hutto's claims of retaliation. Therefore, summary judgment as to Plaintiff's Title VII and § 1981 retaliation claims is granted.[6]

### B.     Title VII Hostile Work Environment Claim

To establish a hostile work environment claim, a plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment affected a term or condition of her employment; (4) the harassment was motivated by her membership in the protected class; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007). A hostile work environment claim pursuant to Title VII exists only "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

[6] Because Dr. Hutto has failed to present a prima facie case for retaliation under Title VII and § 1981, much less rebut Defendants' legitimate, non-discriminatory motives for their actions, and her claims thus fail as to all Defendants, the Court need not address whether the individual defendants named in this action are entitled to qualified immunity as to Dr. Hutto's § 1981 claim.

environment ....' " *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)) (internal citations omitted). The conduct alleged must be sufficiently severe to create an objectively hostile work environment based on the plaintiff's protected status. *Harris*, 510 U.S. at 21-22. The plaintiff must also subjectively perceive the situation to be so hostile. *Id.*

Defendants maintain Dr. Hutto's hostile work environment claim fails because she has not identified any unwelcome conduct that would rise to the level of harassment according to the standards set forth above. In response to Defendants' Motion for Summary Judgment, Plaintiff fails to address her hostile work environment claim and makes no attempt to establish her prima facie case. Because Dr. Hutto has not provided the Court with evidence in support of her claim, no genuine issue of material fact exists concerning Dr. Hutto's hostile work environment claim. Furthermore, based on the reasoning in the section above, Dr. Hutto has failed to establish that the alleged harassment was motivated by her participation in a protected activity or her membership in a protected class. Finally, upon review of Dr. Hutto's verification and the evidence referenced therein, even assuming it was properly before the Court, the behavior complained of does not rise to the level sufficient to support a hostile environment claim or establish the causation required to survive summary judgment. Accordingly, Defendants are entitled to summary judgment as to Dr. Hutto's hostile work environment claim.

### C.    Section 1983 Freedom of Expression Claim

To establish a claim for employment retaliation related to speech pursuant to § 1983, a plaintiff must show: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on maters of public concern outweighs the

defendant's interest in promoting efficiency; and (4) the speech motivated the adverse employment action. *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007); *Harris v. Victoria I.S.D.*, 168 F.3d 216, 220 (5th Cir. 1999). Speech that is primarily motivated by, or primarily addresses, the plaintiff's own employment status rather than a matter of public concern does not give rise to a cause of action under § 1983. *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Teague v. City of Flower Mound*, 179 F.3d 377, 383 (5th Cir. 1999). Whether speech is a matter of public concern "depends on the content, context, and form of the statement in issue." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 342 (5th Cir. 2003). Moreover, in dismissing Dr. Hutto's § 1983 speech-based retaliation claim in 2003, the Fifth Circuit made clear that when proceeding on such a claim, a plaintiff "is required to be specific as to when her statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements." *Id.*

Here, as in the 1999 Suit, Dr. Hutto has utterly failed to identify the precise speech which she claims to have addressed a matter of public concern and to have triggered the retaliation. Dr. Hutto has also not presented to the Court any demonstration that her speech motivated an alleged retaliatory act. Therefore, Dr. Hutto has failed to show her speech involved a matter of public concern and has not established a causal connection between her unspecified speech and the Defendants' actions. Thus, her § 1983 claim is subject to summary judgment.[7]

## Conclusion

Based on the foregoing, Plaintiff's Motion for Leave to Amend Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 52), Plaintiff's Motion to Supplement

---

[7] As with Dr. Hutto's § 1981 claim against individual defendants analyzed above, the Court need not delve into the issue of qualified immunity regarding individual defendants here because Dr. Hutto's § 1983 claim fails on independent grounds.

19

Exhibits Attached to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 53), Plaintiff's Motion for Leave to Amend Proof by a Filing Supplemental Verification of Dr. Roy Foley and Exhibits Thereto (Dkt. No. 54) are DENIED, and Defendants' Motion for Summary Judgment (Dkt. No. 43) is GRANTED.

It is so ORDERED.

Signed this 28th day of September, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE